THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* MARTIN SCHWANER and Others.

*Decree on the accounting of an executor n the Surrogate's Court — when it cannot be attacked in collateral proceedings — an infant, appearing by a special guardian, is bound by the decree made.*

One Schwaner, as the executor of one Schaefer, under a power of sale conferred by the latter's will, sold certain real estate owned by the deceased to one Bernhard G. Amend for the sum of $110,000, at which sum the property had been appraised in proceedings instituted in the Surrogate's Court. At that time the executor and one Paul Amend were carrying on business, as partners, in and as lessees of the said real estate, and the same was thereafter conveyed to them by Bernhard, who took back a mortgage upon the premises. Thereafter the executor's accounts were finally settled by the surrogate, objections having been taken to this manner of disposition of this property and afterwards abandoned, and the executor being charged in such accounts with the consideration received upon the sale of the property, that is, $110,000. Thereafter the executor and his partner gave a third mortgage thereon to Bernhard and his partner, who then owned the other mortgage.

A first mortgage, owned by the plaintiff and subject to which the executor had sold, having been foreclosed, certain of the heirs of Schaefer claimed to be entitled to the surplus moneys on the ground that the sale of the property by the executor was fraudulent and in fact made to himself.

*Held,* that they were estopped by the decree of the surrogate, settling the accounts of the executor, from making such claim.

That those of the heirs who were under age at the time of the said accounting, and were then represented by special guardians, were also estopped from so doing. (See *Moore* v. *Appleby, ante,* p.368.)

Appeal by Margarena Schafer, Paulena Schafer and Lizette Feff from an order made at a Special Term, directing the distribution of surplus moneys.

*A. J. Vanderpoel,* for the appellants.

*C. W. West,* for claimants Eimer & Amend, respondents.

Daniels, J. :

The surplus money in controversy was produced by the sale of property mortgaged to the plaintiff to secure the sum of $30,000 and interest, and the surplus remaining after satisfying the judgment in the foreclosure suit was the sum of $24,807.17. This was claimed by Bernard G. Amend and Charles Eimer under two

mortgages given upon the property amounting in the aggregate to more than the amount of the surplus, and also by the appellants, who claim it as the heirs of Christian Schaefer, deceased, who was the owner of the property at the time of his decease. He left a will, in which Martin Schwaner was appointed his executor, and letters testamentary were issued to him by the surrogate of the county of New York. An application was made to the surrogate for the sale of the real estate and an appraisement was made of its value, by which it was appraised at the sum of $110,000. The sale of the property was directed at not less than that sum, and afterwards made by the executor, but from the deed which was produced upon the hearing it appears to have been conveyed by him not under the authority of the surrogate, but as the executor of the estate. Under a power of sale given to him by the testator to sell and convey his real estate whenever in his judgment it might be for the benefit of the estate to do so. This deed was executed on or about the 11th of December, 1874, to Bernhard G. Amend for the consideration of $110,000, but subject to the mortgage held by the Mutual Life Insurance Company against the property. At the time when the deed was made and delivered the executor, together with·Paul Amend, were carrying on business as partners and lessees of this real estate. It had been adapted to the business of a brewery, and that was what was carried on by these two partners. On the 14th of December, 1874, Bernhard G. Amend, the grantee in the deed from the executor, executed and delivered a deed of the same premises to the executor and his partner Paul Amend for the consideration of $110,000, but subject to the mortgage held by the insurance company. The executor and his partner at the same time executed and delivered a mortgage to him for the sum of $20,000, which was recorded on the 25th of January, 1875, and is one of the mortgages under which the claim was made in his behalf and that of his partner, for the surplus moneys. The property continued to be held in this manner until the 9th of August, 1877, when a final accounting was had before the surrogate of the executor's accounts, and they were then formally settled and adjusted. After this settlement, and on the 17th of December, 1880, the executor and his partner executed and delivered another mort-

gage to Eimer & Amend upon the same property to secure the further sum of $23,423, the first mortgage of $20,000 having previously been assigned by Bernhard G. Amend to the firm in which himself and Eimer were the partners. It was determined by the order from which the appeal has been taken that these two mortgages were legal incumbrances upon the property at the time of its sale, and that Eimer & Amend, who held them, were entitled to receive the surplus moneys. The appellants have assailed the propriety of that conclusion upon the ground that the conveyance made by the executor of the property to Bernhard G. Amend was an artifice adopted by the executor to secure the title to the property for himself and his partner ; and that it was afterwards conveyed to them by Amend to carry this design into execution. And the circumstances were such as to support the accuracy of that conclusion. But it did not follow from that circumstance that the appellants, as three of the heirs of the testator, were entitled to any portion of the surplus money. For after the property had been conveyed in this manner, and the executor and his partner had acquired the formal title to it, the accounting before the surrogate took place, in which the executor was charged with the sum of $110,000 as the consideration-price of the property. And the settlement was made by the surrogate upon the understanding that the executor was liable to account to the estate for this sum of money, after deducting from it the amount due on the mortgage to the insurance company. In this manner the estate did have the benefit of the purchase-price of this property. And while the conduct of the executor in its disposition was brought in question by objections to his account, they were finally abandoned and the account was allowed to be settled on the foundation that this was the extent of the executor's liability arising out of his dealings with this property. And the decree made in that manner has been relied upon and was considered at the Special Term as a legal answer to the objections raised against the validity of the mortgages, held to be entitled to payment so far as the surplus money was adequate for that purpose.

It has been urged, in behalf of these appellants, that this effect was erroneously given to the decree of the surrogate for the reason that they had not attained the age of twenty-one years at the time

when the settlement took place, and were not represented by guardian, but appeared by counsel on the hearing before the surrogate. But this objection is not sustained by the decree which was made upon the accounting. For it is stated in the decree that Henry Wood, Esquire, had been appointed the special guardian of these appellants, and also of another daughter of the testator. And the recital in the decree containing the statement of this fact is entitled to be adopted as truthful, as long as no controlling evidence of its incorrectness has been produced. The employment or appointment of the counsel acting for the appellants is not in conflict with this statement contained in the decree. They may consistently have been appointed and employed, and also a guardian appointed by the surrogate, as the fact is stated to have been in the decree. As the case is presented it must therefore be assumed that the appellants were represented by guardian upon the settlement of the executor's accounts before the surrogate, and that his decree, as far as it extended, was conclusive upon them. (*Phillips* v. *Dusenberry*, 8 Hun, 348.) The surrogate was authorized to include this sum of money, even though it had not in fact been received by the executor by way of a charge against him in his accounts. He had sold the property and become chargeable with its proceeds, and they were a proper subject for the consideration and disposition of the surrogate in the settlement taking place before him. (3 R. S. [6th ed.], 120, § 75 ; chap. 115, Laws 1866, § 1.) And his jurisdiction and authority over this sum of money consummated by means of his decree, cannot be drawn in question in a collateral proceeding of this description (Laws 1870, chap. 359, § 1), which was in force at the time when this accounting took place and the decree of the surrogate was made. If it had been intended to question the legality or correctness of the surrogate's decree that should have been done by way of appeal. It cannot legally be done by drawing it in question, as that has been attempted in this proceeding. (*Harrison* v. *Clark*, 87 N. Y., 572, 577.)

The case of *Fulton* v. *Whitney* (66 N. Y., 548) is not inconsistent with the correctness of this position, for the proceeds of the property then in dispute in no manner entered into the settlement of the estate as it was made by the decree of the surrogate, but the

entire transaction upon which the case proceeded was extraneous to the proceedings and decree in the Surrogate's Court.

If the property had been worth more than the sum with which the executor charged himself in his accounts, that should have been proved upon the hearing, or some measure instituted to put the property up for sale, with a view of charging the executor with the excess of its value beyond the sum admitted by himself. But neither course was taken concerning this property, but the purchase-price with which the executor was charged was practically accepted as sufficient in the proceeding before the surrogate. This was an adjustment, consequently, of the rights of the appellants in this property and precluded them from afterwards claiming that its value had not been sufficiently accounted for. It entered as completely into the settlement and decree as any other item included in the executor's account. And if it was not sufficiently large proof should have been made of that fact and the amount correspondingly increased. But that was not done, and the settlement was allowed to proceed and result in the decree upon the assumption that the executor was sufficiently charged on account of the sale of this property. And that had the effect of concluding the appellants from making further claims against him on this account. It was practically an approval and ratification of what had taken place through which he had obtained the title to the property and for the price of which he was charged. And that necessarily left the title in him subject to the mortgage which had then been given and empowered himself and partner to further incumber it by the mortgage executed and delivered in December, 1880.

It has been urged in support of the appeal that the conduct of the executor was fraudulent in omitting to charge himself with all the rent which had been reserved by the lease. But if he failed to carry the proper charges on this or any other account into the accounts presented by him for settlement before the surrogate, the time to raise the objection was while the proceedings were in progress in that court. The failure to do that, or to appeal from the decree, has left it conclusive in its effects against the appellants as to this and the other objections urged in support of their appeal. Practically the same answer exists as to the failure of Bernhard G. Amend to pay the executor the entire purchase-price of the property.

The estate did not suffer in consequence of his failure to make the payment as long as the executor was charged with the full amount of the consideration. It is moreover probable that it was not expected that the vendee would pay the difference in the purchase money as long as it was the understanding that he should convey back the property to the executor and his partner. The conduct of these parties is justly entitled to the condemnation it received in the opinion of the court at Special Term. And if the facts were presented in such manner as to empower the court to annul the entire transaction by which the title to the property was conveyed by the executor and afterwards received by himself and his partner, that would be a very just and satisfactory disposition to be made of it. But the decree of the surrogate stands in the way of that interference, and that necessarily left the mortgages as valid incumbrances upon the property and the persons holding them entitled to the order which was made directing the payment of the surplus moneys to them.

This order should be affirmed, but as the facts of this case have been presented, it should be without costs.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, without costs.